IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF NEW YORK, *et al.*<br><br>                     Plaintiffs<br><br>                  v.<br><br>FACEBOOK, INC.<br>                     Defendant. | Case No.  1:20-cv-03589-JEB |

**PLAINTIFF STATES' RESPONSE TO FACEBOOK'S
NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiff States submit this response to Facebook's Notice of Supplemental Authority, ECF No. 131, attaching *In re Google Digital Advertising Antitrust Litigation,* No. 5:20-cv-003556-BLF, ECF No. 143 (N.D. Cal. May 13, 2021).  *In re Google*, a class action brought on behalf of a class of advertisers, bears no resemblance to this litigation. It involves different parties, different markets, different claims, and different relief.  That court's decision has no bearing on this litigation, and it is hardly supplemental "authority."

With regard to market definition, as the FTC points out in its proposed response to Facebook's substantially identical notice filed in its case (1:20-cv-03590-JEB, ECF No. 69), the *In re Google* decision is no different from the distinguishable cases that Facebook cited in its motion to dismiss. In each of those cases, plaintiffs had failed to allege that products used by consumers were not reasonably interchangeable with the products within a proposed relevant market.  In contrast, the States' Complaint against Facebook: (a) pleads a single relevant product market for Personal Social Networking Services (*See* Compl. ¶ 26); (b) alleges that consumers use Personal Social Networking Services for the particular purpose of "maintain[ing] personal relationships and shar[ing] experiences with friends, family, and other personal connections in a

shared social space" (*Id.* ¶ 28); (c) alleges that Personal Social Networking Services have distinct characteristics and identifies them (*Id.* ¶¶ 29–31); and (d) alleges that other types of internet services, including specialized social networking services, online video or audio consumption focused services, and mobile messaging services, are all distinct and not reasonably interchangeable, with specific allegations explaining how those services differ, and how consumers use those services for different purposes . (*Id.* ¶¶ 33–36).

With regard to laches, the *In re Google* decision does not even mention laches, let alone address the underlying equitable concerns underlying laches or Facebook's burden to demonstrate prejudice. Instead, the *In re Google* court's statute of limitations discussion suggests that the class plaintiffs should amend their complaint to "plead factual allegations that Google's acquisitions were made in concert with the company's other anticompetitive conduct". 5:20-cv-003556-BLF, ECF No. 143 (N.D. Cal. May 13, 2021), at 8. This is precisely what the States' complaint already alleges. *See., e.g.*, Compl. ¶ 104 (Facebook has been driven by a singular objective "to buy or bury rivals or potential rivals that presented a viable competitive threat" supported by a two-prong strategy); *id.* ¶ 4 ("Facebook illegally maintains [its] monopoly power by deploying a buy-or-bury strategy that thwarts competition"); *id.* ¶ 6 (Facebook continues to "chill[] innovation, deter[] investment, and forestall[] competition").

With regard to Facebook's "duty to deal" arguments, the States' complaint (like the FTC's) does not challenge Facebook's changes to the design of its products (as in *In re Google*), but alleges that Facebook adopted and enforced exclusionary platform policies prohibiting app developers from promoting competing social networks or replicating Facebook functionality. *See., e.g.*, Compl. ¶¶ 199–202. The States' allege Facebook's policies were anticompetitive whether evaluated as either a refusal to deal or conditional dealing. The States' complaint cites

numerous documents that show Facebook executives understood the anticompetitive effects its policies would have, and pursued the policies for that reason. *See., e.g.*, *id.* ¶¶ 1, 215–16, 218, 219–221, 231. Moreover, the States' allegations meet each factor established in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp*, 472 U.S. 585, 610–11 (1985). *See., e.g.*, *id.* ¶¶ 189, 191–98, 199–202, 209, 213–14, 217–21, 231 (Facebook established a prior course of dealing, evidenced by its "open first–closed later" approach to Platform access, and was willing to—and in fact did—sacrifice short-term benefits such as shared content, ad sales, and goodwill). The States' allegations also satisfy conditional dealing under *Lorain Journal Co. v. United States*, 342 U.S. 143 (1951). *See., e.g.*, Compl. ¶¶ 15, 187-–88, 197, 199–202, 230–31 (Facebook's policies deterred competition by conditioning access to its platform to apps that did not threaten its monopoly).

DATED: May 21, 2021                    Respectfully Submitted,

                                                           FOR PLAINTIFF STATE OF NEW YORK
                                                           LETITIA JAMES
                                                           Attorney General

                                                           /s/ Beatriz Marques
                                                           Beatriz Marques
                                                           Assistant Attorney General

                                                           Christopher D'Angelo (D.C. Bar No. 502220)
                                                                Chief Deputy Attorney General
                                                           Elinor R. Hoffmann, Antitrust Bureau Chief
                                                           Kevin Wallace, Senior Enforcement Counsel
                                                           Zachary Biesanz, Assistant Attorney General
                                                           Amber Wessels-Yen, Assistant Attorney General

                                                           New York State Office of the Attorney General
                                                           28 Liberty Street
                                                           New York, NY 10005
                                                           Telephone: 212-416-8160
                                                           Email: beatriz.marques@ag.ny.gov

                                                           *Counsel for Plaintiff State of New York*